IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED

FEB 0 7 2014

Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| DWIGHT RATCLIFF,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF RED LODGE, DEPARTMENT OF POLICE, a Political Subdivision of the State of Montana, and Red Lodge Police Officer AL STUBER,<br><br>Defendants. | CV 12-79-BLG-DWM-JCL<br><br>ORDER |

Plaintiff Dwight Ratcliff ("Ratcliff") brings this action against the City of Red Lodge Police Department ("the City") and one of its officers, Al Stuber ("Officer Stuber"), asserting federal constitutional claims under 42 U.S.C. § 1983, and several pendent state law claims. The City and Officer Stuber have filed motions for summary judgment. (Docs. 46 and 49.) Magistrate Judge Jeremiah Lynch entered Findings and Recommendations on January 10, 2014, recommending that both motions be granted in part and denied in part. (Doc. 67.)

The parties are entitled to *de novo* review of the specified findings or recommendations to which they object. 28 U.S.C. § 636(b)(1). The Court reviews

1

the findings and recommendations that are not specifically objected to for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). All three parties filed timely objections.[1] (Docs. 73, 74, and 75.)

Ratcliff objects to Judge Lynch's determinations that: (1) Officer Stuber had reasonable suspicion for a *Terry* stop, (2) the City's actions did not amount to "deliberate indifference," (3) Ratcliff's negligence per se claim could not be based on a criminal statute, and (4) Ratcliff's claims under the Montana Constitution are limited to those arising under Article II, § 11. Ratcliff also requests a clarification regarding the implications of Judge Lynch's recommendations as to Ratcliff's 42 U.S.C. § 1983 claims.

The City and Officer Stuber object to Judge Lynch's determination that a genuine issue of material fact remains as to whether the scope of the investigatory stop exceeded that of a lawful *Terry* stop and whether excessive force was used. The City also objects to Judge Lynch's determination that the public duty doctrine does not apply to Ratcliff's negligence claims and that Ratcliff can maintain his claim for negligence absent expert testimony as to the applicable standard of care.

---

[1] Officer Stuber's objections (Doc. 75) were filed after the deadline had passed. However, due to technical difficulties with the Court's filing system on the day of the deadline, the submission is considered timely.

Officer Stuber further objects to a number of Judge Lynch's fact characterizations, and asserts that at the very least, Officer Stuber is entitled to qualified immunity as he was not "plainly incompetent."

After reviewing these objections, the Court adopts in part and modifies in part Judge Lynch's Findings and Recommendations. The Findings and Recommendations are modified in that summary judgment is denied as to Ratcliff's § 1983 claim against the city. The Findings and Recommendations are adopted in all other respects. As the parties are familiar with the factual and procedural background, it will not be restated here.

## I. Legal Standard

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.

Once the moving party has satisfied its initial burden with a properly

supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Id.* at 255.

## II. Discussion

### A. Ratcliff's Objections

#### 1. *Terry* Stop: Reasonable Suspicion

Ratcliff contends Judge Lynch incorrectly determined Officer Stuber had reasonable suspicion to make an investigatory stop because Officer Stuber did not affirmatively know Ratcliff was involved in the altercation. This argument, however, supports a finding of reasonable suspicion.

For a *Terry* stop to be lawful under the Fourth Amendment, the officer must have "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot[.]'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). This standard of proof is less than that of

probable cause. *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000). Whether reasonable suspicion exists for a *Terry* stop depends on the totality of the circumstances. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Here, Officer Stuber received a call from dispatch that two men with motorcycles were involved in an altercation with a woman and her family, and all parties were at a gas station on Highway 308. Upon arriving at the scene, Officer Stuber saw an individual in motorcycle gear standing next to a motorcycle. Officer Stuber was aware at this time that one of the two motorcyclists had driven away. At this point, the Officer Stuber ostensibly had reasonable suspicion to conduct an investigatory stop to confirm or dispel his suspicion that the man next to the motorcycle, Ratcliff, may be one of the men involved in an altercation where physical violence had been alleged. *See Gallegos v. City of L.A.*, 308 F.3d 987, 991 (9th Cir. 2002) ("The whole point of an investigatory stop, as the name suggests, is to allow police to *investigate*[.]") Judge Lynch correctly determined that Officer Stuber had reasonable suspicion under the totality of the circumstances to instigate a *Terry* stop.[2]

---

[2] Ratcliff makes a number of other arguments under this heading, however, they more properly relate to the scope of the stop and the use of force. As Judge Lynch determined summary judgment was not appropriate as to either issue, his contentions merely supplement that finding.

## 2. § 1983 Liability for the City

Ratcliff's excessive force claim against the City is based on his allegation that the policies regarding complaint and disciplinary procedures amount to a deliberate indifference to the constitutional rights of others and Police Chief Richard Pringle ("Chief Pringle") ratified Officer Stuber's unconstitutional conduct.[3] Ratcliff has not presented sufficient evidence to raise a genuine issue as to deliberate indifference. However, the City may be found liable based on Chief Pringle's ratification of Officer Stuber's conduct.

While local governments may be sued under 42 U.S.C. § 1983, they cannot be held vicariously liable for their employees' constitutional violations. *Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). However, a municipality can be held liable under § 1983 if it had a "deliberate policy, custom or practice that was the 'moving force' behind the constitutional violation" suffered by the plaintiff. *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) (citing *Monell*, 436 U.S. at 694-95). A plaintiff can establish such a policy by demonstrating that "that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional

---

[3] Even though these arguments are raised for the first time on objection to Judge Lynch's Findings and Recommendations, the Court has the discretion to consider them. *See Akhtar v. Mesa*, 698 F.3d 1202, 1208 (9th Cir. 2012).

6

violation[,]" *Gibson v. Co. of Washoe*, 290 F.3d 1175, 1186 (9th Cir. 2002), or that "'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinates's unconstitutional decision of action and the basis for it,'" *Clouthier v. Co. of Contra Costa*, 591 F.3d 1323, 1259 (9th Cir. 2010) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 2002)). A municipality is not automatically liable under § 1983 if an officer applies a policy in an unconstitutional manner. *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009) (citation omitted).

Ratcliff contends that the City's deliberate indifference to complaints regarding officers' use of force and failure to discipline amounts to city policy through omission. "To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Clouthier*, 591 F.3d at 1259. A showing of negligence is not enough. *City of Canton v. Harris*, 489 U.S. 378, 407 (1989). The Ninth Circuit has "consistently . . . found that a county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference, even when the county has other general policies in place." *Long v. Co. of L.A.*, 442 F.2d 1178, 1189 (9th Cir. 2006); *Gibson v. Co. of Washoe, Nev.*, 290 F.3d 1175, 1195 (9th Cir. 2002); *Fairley v. Luman*, 281 F.3d 913, 918 (9th

Cir. 2002). A municipality can also be held liable under § 1983 for failing to discipline its employees. *Haugen v. Brosseau*, 339 F.3d 857, 875 (9th Cir. 2003); *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991) (noting the plaintiff provided evidence from a two-year study of complaints against the Los Angeles Police Department demonstrating it was "almost impossible for a police officer to suffer discipline as a result of a complaint lodged by a citizen."). However, the failure to overrule an unconstitutional act does not automatically implicate § 1983 liability. *Gillette*, 979 F.2d at 1347.

Here, Ratcliff contends there is no formal policy for how a complaint is made or reviewed. Ratcliff further contends complaints are not investigated properly and employees are not disciplined. Considered together, he contends this amounts to deliberate indifference. However, Ratcliff has failed to come forward with evidence to this effect. At most, Ratcliff can point to isolated instances of use of force, (Doc. 48-2 at 33-34), with no indication complaints were made in any of these instances. Ratcliff's remaining arguments center on how the City dealt with his complaint, which does not show a general lack of procedure. Ratcliff also describes the general police policy regarding complaints, however, it is unclear from where in the summary judgment record it was drawn and if it is the City's complete policy as to these matters.

Ratcliff alternatively alleges that the City should be held liable for ratifying Officer Stuber's unconstitutional conduct. Municipal liability can exist if an official with final policy-making authority ratifies a subordinate's unconstitutional decision or action and the basis for it. *Trevino*, 99 F.3d at 920; *Clouthier*, 591 F.3d at 1250. "There must . . . be evidence of a conscious, affirmative choice on the part of the authorized policymaker." *Clothier*, 591 F.3d at 1250 (internal quotation marks and citation omitted). The mere fact that a final policymaker does not overrule a subordinate is not sufficient to form the basis for municipal liability under § 1983. *Gillette*, 979 F.2d at 1348. Where the Ninth Circuit has found municipal liability on these grounds, the decision-maker often signs off on a formal writing ratifying the subordinate's actions. *See Larez*, 946 F.2d at 645-48 (individual filed a complaint with the LAPD alleging excessive force was used against him, LAPD investigated it, and the police chief signed a letter stating that none of the complaints could be sustained, thereby ratifying the investigation and the search); *Fuller v. City of Oakland*, 47 F.3d 1522, 1526 (9th Cir. 1995).

Here, Chief Pringle is the official policymaker for the City on police matters. Chief Pringle personally reviewed the recording of the incident, determining "no excessive force was used by Officer Stuber. Officer Stuber had to gain control of the situation and Mr. Ratcliff was not responding to verbal

9

directions." (Doc. 48-2 at 30.) This formal letter ratifying Officer Stuber's conduct—and the basis for it—demonstrates that Chief Pringle fully supported Officer Stuber's choice to use force on Ratcliff, going beyond a mere failure to overrule that decision.

Based on the foregoing, the City's motion for summary judgment is denied as to the City's liability pursuant to § 1983. Judge Lynch's findings and recommendations are modified to the extent they are inconsistent with this ruling.

### 3. Negligence per se

Ratcliff insists that his claim for negligence per se may be properly based on the criminal statute governing the mistreatment of prisoners, Montana Code Annotated § 45-5-204. Ratcliff fails to respond, however, to Judge Lynch's analysis pursuant to *Doyle v. Clark*, 254 P.3d 570, 577 (Mont. 2011), which held that "if the statute in question may be enforced only by the state, a private individual may not attempt to recover for violation of the statute under a negligence per se claim." In the absence of any discernable argument to the contrary, the City is entitled summary judgment as to this claim. To the extent Ratcliff contends the custodial relationship is "special" and gives rise to a general duty under Montana law, such an argument is not based on negligence per se and does not further his argument.

### 4. Montana Constitutional Claims

Ratcliff further objects to Judge Lynch's determination that the City is entitled to summary judgment on Ratcliff's claims under the Montana Constitution regarding his right to privacy, Article II, § 10, and due process, Article II, § 17.

Montana's privacy clause, Article II, § 10, is not implicated if a seizure is supported by the requisite cause. *Peschel v. City of Missoula*, 664 F. Supp.2d 1149, 1161 (D. Mont. 2009). As the requisite cause of reasonable suspicion was met here, the City is entitled to summary judgment as to Ratcliff's claims under Article II, § 10. Further, a government official's failure to protect an individual from harm generally does not constitute a violation of the due process clause. *Nelson v. Driscoll*, 983 P.2d 972, 982 (Mont. 1999). Therefore, City Defendant's motion for summary judgment is granted as it regards Ratcliff's claim under Article II, § 17 of the Montana Constitution.

### B. The City and Officer Stuber's Objections

#### 1. Existence of a Complete Recording

The City and Officer Stuber object to Judge Lynch's determination that genuine issues of material fact remain as to the scope of the investigatory stop and the question of excessive force on the grounds the entire event was recorded, contending any remaining issues are purely questions of law. They are incorrect.

11

In *Scott v. Harris*, 550 U.S. 372 (2007), a high-speed chase is entirely recorded by the pursuing officer. The plaintiff, who was ultimately injured in a car crash caused by the officer, sued under § 1983. The Supreme Court held that the Eleventh Circuit should not have relied upon "such visible fiction" when it adopted the version of the facts provided by the plaintiff when they were so clearly discredited by the video of the event. *Scott*, 550 U.S. at 380. According to the Court, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* The City and Officer Stuber contend this same rationale applies in the present case. Officer Stuber further argues that Judge Lynch's reliance on *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) is misplaced. In *Blankenhorn*, the Ninth Circuit found the reasonableness of the officers' actions vis-a-vis the plaintiff was matter for the jury because obstructions in the recording—a pole covering much of the shot and no audio—resulted in the parties drawing very different inferences based on what was depicted. 485 F.3d at 468 n. 10.

Similar to *Scott*, the entire event in this case is recorded. However, unlike the situation in *Scott* and more similar to *Blankenhorn*, the video here leaves

ample room for a jury to believe a different version of events than the one presented by the City and Officer Stuber. Construing the video in a manner most favorable to Ratcliff, a genuine issue of material fact remains as to both the scope of the investigatory stop and the use of force. Unlike the situation in *Scott*, interpreting the video in favor of Ratcliff is not blatantly contradicted by the video. *See Marvin v. City of Taylor*, 509 F.3d 234, 241 (6th Cir. 2007) (refusing to accept the plaintiff's version of the facts because they were "blatantly contradict[ed]" by the video). The video does not clearly show a hostile resistance to police efforts as argued by the City and Officer Stuber. Nor does the video clearly refute an account of events in Ratcliff's favor. It is not clear from the video whether Ratcliff heard Officer Stuber's first few commands to stop or that Ratcliff's failure to comply was purposeful. Therefore, the determination of the objective reasonableness of the scope of the stop is one for the jury. Similarly, whether Ratfcliff was being compliant or resisting Officer Stuber's attempts to place him in handcuffs is for the trier of fact to resolve.[4]

## 2. Qualified Immunity

Officer Stuber further argues that at a minimum, he is entitled to qualified

---

[4] Officer Stuber's objection also consists of a number of fact clarifications. The fact Officer Stuber felt such clarifications were necessary supports a finding that the recording can be interpreted in different ways.

immunity. Officer Stuber relies on *Stanton v. Sims*, ___ U.S. ___, 134 S. Ct. 3, 4-5 (2013) to argue that unless he was "plainly incompetent," qualified immunity provides a complete defense for his actions. In *Stanton*, a police officer with probable cause to arrest a suspect for a misdemeanor kicked open a third party's front gate while in hot pursuit of the suspect. 134 S. Ct. at 4. The Supreme Court determined the officer was entitled to qualified immunity because the law as to warrantless entry during hot pursuit was not clearly established and the officer was not "plainly incompetent" in his interpretation of the law. *Id.* at 5.

Here, Officer Stuber fails to show that the law in question is not clearly established. Exceeding the scope of a *Terry* stop and making an unlawful arrest is a clear violation of a suspect's Fourth Amendment right to be free from unreasonable seizure. *Fla. v. Royer*, 460 U.S. 491, 500 (1983). The Fourth Amendment right to be free from excessive force in the context of an arrest or a *Terry* stop is equally established. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Therefore, application of the *Stanton* holding is inapposite. As the relevant law was clearly established at the time of the incident, Officer Stuber is not entitled to qualified immunity.

### 3. Public Duty Doctrine

The City insists the public duty doctrine bars Ratcliff's negligence claim

against Officer Stuber. Although the City is correct that the existence of a "special relationship" acts as an exception to the public duty doctrine once triggered, the doctrine does not apply when a law enforcement officer is the sole alleged cause of the plaintiff's injury.

The Montana Supreme Court has not specifically answered the question that is now before this Court: whether the public duty doctrine applies in an excessive use of force claim against an officer. When an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Med. Laboratory Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir.2002) (citations omitted). In doing so, the court must "look to existing state law without predicting potential changes in that law." *Ticknor v. Choice Hotels Intl., Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (citation omitted). The court should also rely on persuasive authorities, including treatises and decisions from other jurisdictions, as guidance. *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir.1996).

The City's assertion that Montana has never limited the scope of the public duty doctrine beyond the special relationship exception is incorrect. The Montana Supreme Court has held that a the public duty doctrine is not a blanket bar against

any and all tort claims brought against a public body. *Gatlin-Johnson ex rel. Gatlin v. City of Miles City*, 291 P.3d 1129, 1133 (Mont. 2012). After outlining a number of cases where the public duty doctrine had not been applied, the Court stated, "[i]t is clear that in each case there was no need to invoke the public duty doctrine because the governmental entity had a specific duty, such as premises liability, that was sufficient to support a tort claim." *Id.* Therefore, the threshold question is whether Officer Stuber had a specific duty to Ratcliff that is sufficient to support a tort claim.

Here, the alleged harm here does not arise from a violation of a general duty to protect, but a violation of the reasonable and prudent person standard. In *Scott v. Henrich*, the Montana Supreme Court did not apply the public duty doctrine but instead held that where officers shot the plaintiff's husband, the reasonable and prudent person standard applied. 958 P.2d 709, 711 (Mont. 1998). The facts here are similar in that the injury alleged arises solely from Officer Stuber's conduct, not the actions of a third party. Therefore, the public duty doctrine is not applicable and Officer Stuber had a general duty of care, obligating he act as "a reasonable and prudent person [would] under the circumstances in accordance with traditional negligence standards in Montana." *Id.*

16

### 4. Lack of Expert Testimony

The City further objects to Judge Lynch allowing Ratcliff's negligence claim to proceed without expert testimony concerning duty and breach. Summary judgment in favor of the defendant is appropriate "if a plaintiff fails to offer proof of any one of the elements of a negligence claim[.]" *Dubiel v. Mont. Dept. of Transp.*, 272 P.3d 66, 69 (Mont. 2012). "[E]xpert testimony is required to establish the standard of care unless the conduct complained of is readily ascertainable by a lay[person]." *Weaver v. State*, 310 P.3d 495, 503 (Mont. 2013) (citation and internal quotation marks omitted). Generally, expert testimony is required to understand the standard of care applicable to "work calling for a special skill[.]" *Brookins v. Mote*, 292 P.3d 347, 362 (Mont. 2012).

The City provides no argument supporting its proposition that expert testimony is necessary in an excessive force case such as this. To the contrary, courts have determined the opposite. *See e.g. United States v. DiSantis*, 565 F.3d 354, 364 (7th Cir. 2009) ("Although in some instances expert testimony may assist the jury in determining whether an officer used excessive force, expert testimony is by no means required in all excessive force cases." (citation omitted)); *Parker v. Gerrish*, 547 F.3d 1, 9 (1st Cir. 2008). Therefore, the lack of expert testimony is not fatal to Ratcliff's negligence claim.

## C. Ratcliff's Request for Clarification

Ratcliff requests clarification as to implications of Judge Lynch's denial of summary judgment as to Officer Stuber under § 1983 and his grant of summary judgment to the City under the same. Although summary judgment is no longer granted as it relates to Ratcliff's § 1983 claims against the City, Judge Lynch's recommendation (that one be dismissed but not the other) is consistent as a matter of law.

## III. Conclusion

Upon *de novo* review of the Findings and Recommendations to which the various parties object, the Court agrees with Judge Lynch's determinations to the extent not specifically modified above. There being no clear error in Judge Lynch's remaining findings and recommendations,

IT IS ORDERED:

(1) Judge Lynch's Findings and Recommendations (Doc. 67) are ADOPTED IN PART and MODIFIED IN PART.

(2) Defendant City of Red Lodge's motion for summary judgment (Doc. 46) is GRANTED IN PART and DENIED IN PART.

(3) Defendant Officer Stuber's motion for summary judgment (Doc. 49) is GRANTED IN PART and DENIED IN PART.

Dated this 7th day of February, 2014.

/s/ Donald W. Molloy
Donald W. Molloy, District Judge
United States District Court